**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HORACE LINTON BROWN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-24-1914** |
| **DIRECTOR RYAN ROSS, *et al.*,** | * | |
| **Defendants.** | * | |

# MEMORANDUM OPINION

Self-represented plaintiff Horace Linton Brown, a former detainee at the Charles County Detention Center ("CCDC"), filed this civil rights lawsuit against Director Ryan Ross, Captain Stine, Corporal Hancock, and former Director Foster ("the County defendants").[1] ECF 1, 3. Brown brings claims for damages under 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment rights. Brown alleges that the defendants violated the Fourteenth Amendment's Due Process Clause by detaining him 11 days past when his sentence would have expired had the defendants properly classified his offense of conviction as non-violent. ECF 3, at 3. Brown claims the misclassification prevented his timely release on parole. *Id*. at 4.

The County defendants initially filed a motion to dismiss the complaint because Brown had not exhausted his administrative remedies. ECF 7-1. The Court denied the motion because Brown was not a prisoner when he filed suit and was not subject to the Prison Litigation Reform Act's exhaustion requirements. *See* ECF 12, at 4–5; 42 U.S.C. § 1997e. The Court directed the defendants to respond again to the complaint and the supplement. ECF 12, at 6. Additionally, the

[1] Brown filed a second complaint, ECF 3, which was construed as a supplemental complaint, *see* ECF 12.

Court allowed Brown to add Carolyn J. Scruggs, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), as a defendant. *Id.* at 5.

Now pending are Scruggs's motion to dismiss, ECF 17, and the County defendants' motion for summary judgment, ECF 21. Brown opposes both motions, *see* ECF 19 (response in opposition to Scruggs's motion to dismiss), 23 (response in opposition to the County defendants' motion for summary judgment), 28 (revised response in opposition to the County defendants' motion for summary judgment), and the County defendants filed a reply, *see* ECF 25. Also pending are Brown's motion to modify his original complaint, ECF 20, and motion for leave to file a supplemental rebuttal, ECF 32. No hearing is necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons stated below, Brown's motion to modify his original complaint and motion for leave to file a supplemental rebuttal are granted. The Court considers Brown's additional allegations in the motion to modify and his arguments in the rebuttal. Even considering those allegations and arguments, Scruggs's motion to dismiss and the County defendants' motion for summary judgment are granted.

## I. Background

In a prior ruling, the Court summarized the allegations in the complaint as follows:

> Brown alleges that on September 30, 2021, he was sentenced to 18 months' imprisonment in CCDC and that he began serving his sentence on October 15, 2021. ECF 1, at 5. Brown states that he was given an estimated release date of October 3, 2022, which took into account good time and work credits Brown earned. *Id*. Brown contends that he was erroneously credited only with 5 days of good time per month rather than 10 days, because his case was misclassified as violent even though it did not meet the requirements for such classification. *Id*. Brown reported the miscalculation on February 7, 2022, and Hancock responded that the calculation was correct. *Id*. On June 6, 2022, Brown reported the miscalculation to Smith. *Id*. Smith responded that Hancock previously addressed the issue, and he recommended that Brown contact his attorney. *Id*. On June 25, 2022, Brown sent a request to Stine, who "finally realized the mistake and ordered

> the petitioner released on 7/14/2022 around 2 pm." *Id*. Brown contends that he should have been released 11 days earlier, on July 3, 2022. *Id*. He further contends that he was denied a parole hearing due to the misclassification of his case as violent and that if he had a parole hearing, he may have been released months earlier. *Id*.

ECF 12, at 1–2.

The County defendants have submitted an explanation of how Brown's sentence was calculated, which they admit was "not straightforward." ECF 21-1, at 2–8; ECF 21-2 (Aff. of Sgt. John Arcadipane, CCDC Case Mgmt. Supervisor). Arcadipane states that Brown was sentenced to 18 months and 260 days after being convicted of Sex Abuse of a Minor. ECF 21-2, at 1; *see also* ECF 21-3 (Commitment Record). Arcadipane explains that the sentence calculation involved determining the term of confinement dates and deducting pre-sentence and post-sentence good time credits as well as special credits that Brown earned for completing industrial tasks and selected work projects. ECF 21-2, at 2–7. First, Brown was credited with five days "for each calendar month of pre-sentence confinement." *Id*. at 3. For his post-sentence confinement, he was credited for "10 days per calendar month of post-sentence good conduct time." *Id*. at 4. Arcadipane explains that this calculation assumed that Brown's conviction was *not* a crime of violence. *Id.* at 2. "If Mr. Brown's charge had been categorized as a crime of violence . . . he would have only received 5 days per month of postsentence good time credit deductions." *Id*. at 4 n.1. However, Arcadipane acknowledges that it is not evident "simply from the court records whether [Brown's offense of conviction] is characterized as a crime of violence for purposes of calculating deductive credits because that is based on the details of the facts." *Id*. at 1–2.

Arcadipane ultimately determined that Brown was entitled to 43 days of pre-sentence credit and 180 days of post-sentence credit, which resulted in a new release date of September 2, 2022. *Id*. at 5. Next, Brown was credited an additional 46 days for participating in a work program as

well as completing other "[s]elected work projects," which brought his release date to July 18, 2022. *Id*. at 5–6. Arcadipane reports that Brown was released on July 14, 2022. *Id*. at 7.

## II. Scruggs's Motion to Dismiss

Brown argues that Scruggs, as Secretary of DPSCS, is responsible for the misclassification of his underlying conviction, which Brown claims caused him to overstay his prison sentence. In response, Scruggs moves to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### A. Standard of Review

Rule 12(b)(1) permits a party to move to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Scruggs argues that any § 1983 claim brought against her in her official capacity should be dismissed under Rule 12(b)(1) because she is immune from suit under the Eleventh Amendment.[2]

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited

[2] "Eleventh Amendment immunity presents a jurisdictional question that may bar a suit from advancing to the merits." *Indus. Servs. Grp. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023); *see Edelman v. Jordan*, 415 U.S. 651, 678 (1974) ("[I]t has been well settled . . . that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar."). Although the Fourth Circuit has been "unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)," *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000), this Court evaluates the defendants' Eleventh Amendment immunity argument under the Rule 12(b)(1) standard, even if Eleventh Amendment immunity implicates only the Court's Article III jurisdiction, not its subject matter jurisdiction. *See Rodriguez v. Roberson*, No. 5:23-CV-745-M-BM, 2024 WL 3898446, at *4 (E.D.N.C. July 29, 2024) (considering "Eleventh Amendment immunity under a 12(b)(1) framework").

jurisdiction," possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (citation modified). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citation modified). When, as here, a defendant contests subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (citation modified).

Scruggs also moves to dismiss Brown's complaint pursuant to Rule 12(b)(6). Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, the nonmoving party must have pleaded facts sufficient to demonstrate it has a plausible right to relief from the Court. *See Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (citation modified).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*,

45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation modified). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (citation modified). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citation modified). If an affirmative defense "clearly appears on the face of the complaint," however, it may be raised as a basis for dismissal under Rule 12(b)(6). *See Andrews*, 201 F.3d at 524 n.1 (citation modified).

Brown does not have counsel. "[P]ro se filings are 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (citation modified). Accordingly, the Court must construe Brown's pleadings liberally. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the Court] to attempt to discern the unexpressed intent of the plaintiff." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation modified). The Court need only "determine the actual meaning of the words used in the complaint." *Id.* Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified).

### B. Discussion

#### 1. Official Capacity Claims against Scruggs

Scruggs argues that she is immune from § 1983 claims against her in her official capacity under the Eleventh Amendment.

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation modified). Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Scruggs is sued in her official capacity as Secretary of DPSCS. "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. 08–7918, 2009 WL 646247, at *2 (4th Cir. Mar. 13, 2009) ("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state for purposes of § 1983."). Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its Eleventh Amendment immunity to suit in federal court.

Even if the State does not consent, Eleventh Amendment immunity does not bar suit: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief

against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (citation modified). Neither exception applies here. First, Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court. *See Will*, 491 U.S. at 66. Second, Brown seeks only monetary damages, not prospective injunctive relief.

Accordingly, Brown's § 1983 claims against Scruggs in her official capacity are dismissed without prejudice.

**2. Individual Capacity Claims against Scruggs**

The Eleventh Amendment does not bar Brown's § 1983 claims for damages against Scruggs in her individual capacity. Scruggs argues that any § 1983 claims against her in her individual capacity should be dismissed because Brown has failed to allege that "Scruggs herself was involved in any of the allegedly unconstitutional acts." ECF 17-2, at 8.

A defendant's own action—or failure to act—is required for § 1983 liability. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. State officials may be found liable under § 1983 only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights," *Vinnedge*, 550 F.2d at 928 (citation modified), or took "supervisory actions that violated constitutional norms," *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (citation modified).

To state a claim for supervisory liability under § 1983, the plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that [their] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an

> affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citation modified).

To survive a motion to dismiss, Brown's "allegations must be particular enough to allow one to infer what each defendant did and knew." *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) (citing *Ashcroft*, 556 at 678–79). Brown alleges only that DPSCS is responsible for correctly classifying offense of convictions as violent or non-violent and for "conduct[ing] a timely Parole hearing with inmates prior to serving one quarter of their term of imprisonment." ECF 11, at 1–2. Although Brown alleges that DPSCS incorrectly classified his offense as violent and consequently failed to conduct a timely parole hearing, *id*. at 2, Brown does not allege that Scruggs herself was involved in calculating his sentence, classifying his conviction, or failing to schedule a parole hearing. Nor has Brown alleged that any of Scruggs' subordinates was responsible for the alleged unconstitutional conduct. And even if Brown had sufficiently alleged either Scruggs's personal involvement in or supervisory actions over the challenged conduct, Brown nevertheless fails to allege a violation of his constitutional rights because, as explained below, he has no constitutional liberty interest in a parole hearing. Brown has not stated a § 1983 claim against Scruggs in her individual capacity.

Scruggs' motion to dismiss is granted.

## III. County Defendants' Motion for Summary Judgment

The County defendants move for summary judgment on Brown's constitutional claim against them.

### A. Standard of Review

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party" but avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (citation modified). The Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (citation modified).

"To avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citation modified). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citation modified). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (citation modified); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to the nonmoving party." *Perkins*, 936 F.3d at 205 (citation modified).

**B. Discussion**

The County defendants argue that they are entitled to summary judgment because Brown's sentence was correctly calculated and he was released four days *before* the expiration of his sentence. On these facts, the County defendants claim that, as a matter of law, there was no violation of Brown's due process rights. Alternatively, the County defendants argue that they are entitled to qualified immunity.

Brown does not dispute—and he seems to acknowledge—the accuracy of the County defendants' calculation of his sentence. *See generally* ECF 23. Rather, Brown contends that his constitutional rights were violated because his offense of conviction was incorrectly classified as violent and that miscalculation prevented his consideration for parole after 25 percent (as opposed to 50 percent) of his sentence was served. *Id*. at 1. Brown argues that, had his offense been properly classified as non-violent from the start, he "would have been eligible for a parole hearing beginning on March 1, 2022, and released on July 3rd, [sic] 2022" and that he "was never given a parole hearing after serving 25% of his sentence because the parole board was informed that his case was classified as violent." *Id*. at 3. Brown further argues that the County defendants have a duty to classify inmates' offenses accurately and that their failure to do so was negligent and violated his due process rights. *Id*. at 4–5.

To establish a due process violation, Brown must show that he had a constitutionally protected property or liberty interest at stake. *See Mathews v. Edridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests . . . ."); *Cartagena v. Lovell*, 103 F.4th 171, 182–83 (4th Cir. 2024). If a protected property or liberty interest is identified, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Brown argues that he had a liberty interest in early release from incarceration through the parole process. He is incorrect. Brown had no constitutional right to parole. Maryland's statutory scheme "does not create a legitimate expectation of parole release," so inmates have "no right protected by the due process clause" associated with the discretionary parole process. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7–8 (1979) (holding that there is no constitutionally guaranteed liberty interest in grant of parole); *Poore v. Underwood*, No. 00-7036, 2001 WL 117505, at **1 (4th Cir. Feb. 12, 2001) ("An inmate has no constitutional right to parole. Federal courts must allow state parole authorities wide discretion." (citation modified)). "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained . . . . a hope which is not protected by due process." *Greenholtz*, 442 U.S. at 11.

For a person incarcerated in a Maryland state facility, a liberty interest in parole arises only after an inmate is served with an Order of Parole. *Patuxent Inst. Bd. of Rev. v. Hancock*, 620 A.2d 917, 931 (Md. 1993) (When "it served the respondent with an Order of Parole and a copy of a parole agreement, the petitioner effected the respondent's parole and, in the process, created in him a liberty interest in parole release. It is the order of parole . . . from which the liberty interest flowed."). Here, Brown does not assert that he was detained in violation of an Order of Parole. On the contrary, Brown alleges that his parole eligibility determination was delayed and that he was eventually paroled. Because Brown does not allege that he was detained after receiving an Order of Parole, he does not allege a liberty interest.

Brown cannot establish that he had protected liberty interest for which process was due. His due process claim therefore fails as a matter of law. *See Henderson v. Simms*, 223 F.3d 267, 275 (4th Cir. 2000) (noting that "[w]ith no liberty interest to protect, there is no violation of due

process”). The Court grants summary judgment on Brown’s constitutional claim to the County defendants.

**IV. Conclusion**

For the foregoing reasons, Brown’s motion to modify his original complaint and his motion to file a supplemental rebuttal are granted. Scruggs’s motion to dismiss and the County defendants’ motion for summary judgment are granted. Brown’s claims against Scruggs in her official capacity are dismissed without prejudice. His claims against Scruggs in her individual capacity are dismissed with prejudice. Summary judgment is granted in favor of the County defendants. To the extent that Brown raises a state law tort claim for negligence, this Court declines to exercise supplemental jurisdiction over any such claim. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Brown’s state law claim is dismissed without prejudice.

A separate order follows.

September 29, 2026
Date

Deborah L. Boardman
United States District Judge